United States District Court
District of Maine

| | |
|---|---|
| **Perry Nye**<br>of<br>Rome, ME 04963<br><br>**PLAINTIFF**<br><br>v.<br><br>**Life Insurance Company of North America**<br>**d/b/a Cigna**<br>of<br>Bloomfield, CT 06002<br><br>**DEFENDANT** | Civil Case No: _____ |

## COMPLAINT

Now comes Perry Nye, Plaintiff, and files this Complaint asserting causes of action for relief at law and equity against Life Insurance Company of North America.

### I.
### Nature of the Action

1. This is an action brought under the Employment Retirement Income and Security Act ("ERISA"), 29 U.S.C. §1132, to secure long-term disability benefits wrongfully denied Plaintiff Nye by Defendant Life Insurance Company of North America (hereinafter "LINA").

### II.
### Parties

2. Plaintiff Perry Nye is a resident of Rome, Kennebec County, Maine, and a participant and beneficiary, as defined by 29 U.S.C. §§1002(7) and (8), of his employer's employee welfare benefit plan that included long term disability benefits.

3.  Defendant, LINA, insurer and claims fiduciary, is by information and belief a for-profit insurance company with a principal place of business in Bloomfield, Connecticut.

### III.
### Jurisdiction and Venue

4.  This action arises out of claims made pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*  This Honorable Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331, federal question jurisdiction.

5.  Plaintiff has complied with all prior requirements and conditions precedent necessary for filing this lawsuit.

6.  Plaintiff has exhausted the administrative remedies made available to him by Defendant.

7.  Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2) because one or more of the breaches of which Plaintiff complains occurred in Maine.

### IV.
### Facts

8.  Plaintiff, Perry Nye, was employed as a millwright by Verso Paper Holdings ("Verso") in Jay, Maine for more than twenty-three years, from 1988 until 2012.

9.  Due to increasingly severe lumbar pain, in 2006 Plaintiff underwent L2345 decompression.  He eventually underwent L4-5 lumbar fusion in 2007 and L3-4 lumbar fusion in 2009.  Despite his worsening condition, Plaintiff continued working until March 28, 2012, when chronic back and leg pain prevented him from performing the material duties of his own occupation.  He underwent L2-L3 decompression and L2-L5 fusion on

April 3, 2012 but this failed to relieve his debilitating pain and he has been totally disabled since.

10.     The Plaintiff, as a plan participant and beneficiary, had Long Term Disability ("LTD") insurance coverage under Group Policy LK 961152 (hereinafter, the "Plan").

11.     The Plan named Defendant as the sole and exclusive adjudicator of claims appeals under 29 U.S.C. §1133(2), ERISA §503(2).

12.     The Plan did not and does not permit Defendant's denial of disability benefits claims to be appealed to any other tribunal.

13.     By information and belief, the Plan was not self-funded. Benefit payments necessarily come from Defendant's own funds.

14.     The Plan provided for two years of "Regular Occupation" benefits and subsequent benefits under an "any occupation" ("Any Occupation") standard of disability. In summary, the Defendant granted Regular Occupation benefits but denied Any Occupation benefits despite overwhelming evidence of Plaintiff's continuing disability.

15.     The Plan defines Regular Occupation disability as follows: "The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is: 1. unable to perform the material duties of his or her Regular Occupation; and 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation."

16.     Defendant found Plaintiff disabled under this Regular Occupation standard, began paying benefits as of September 25, 2012 and ultimately paid Plaintiff disability benefits for 24 months.

## Summary of Administrative Appeal Process

17.     On July 28, 2014, Defendant preemptively denied Plaintiff Any Occupation disability benefits for the period beginning September 25, 2014 (hereinafter, "Initial Denial"). Undersigned counsel formally appealed this Initial Denial in a letter dated March 24, 2015. Over the next several months, undersigned counsel submitted additional arguments and medical evidence with a final submission on September 14, 2015.

18.     In spite of this additional evidence demonstrating Plaintiff's continued disability and, in fact, deterioration, Defendant denied this appeal in a letter dated October 15, 2015 (hereinafter "Appeal Denial"). Undersigned counsel timely appealed this Appeal Denial and submitted further evidence of Plaintiff's continuing disability with a letter dated May 13, 2016 (hereinafter "Second Appeal"). During this Second Appeal period, Plaintiff's condition continued to deteriorate and undersigned counsel requested repeated extensions of time to provide records of his treatment which eventually entailed yet another spinal surgery on November 29, 2016.

19.     Despite unavoidable delays experienced in obtaining records of the surgery, undersigned counsel ultimately received the evidence and on February 2, 2017 notified Defendant of this but requested more time to obtain an additional clarifying statement from Plaintiff's surgeon.

20.     On February 3, 2017, a Friday, Defendant sent a letter via postal mail that announced for the first time that no further extension of time would be granted to submit evidence. Although Defendant was aware that the surgery records had been received and contained new and material evidence concerning the entire policy period, Defendant did not request these records from undersigned counsel. Instead, on Monday, February 6,

2017—just one business day after posting a letter unexpectedly denying Plaintiff the opportunity to submit available material evidence—Defendant issued another denial (hereinafter "Second Appeal Denial").

21. In a letter dated March 7, 2017, undersigned counsel demanded that Defendant reopen the claim and, in the alternative, that Defendant grant a voluntary appeal. By letter dated March 14, 2017, Defendant agreed to conduct an addendum file review to consider the new evidence (hereinafter "Addendum Review").

22. Despite overwhelming evidence demonstrating Plaintiff's continued disability, Defendant issued a final denial in a letter dated April 6, 2017 (hereinafter "Final Denial"). The present action follows this Final Denial.

### Initial LTD Denial

23. To continue receiving disability benefit payments after the Regular Occupation period, the Plan requires beneficiaries meet the Any Occupation definition of disability: "After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is: 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and 2. unable to earn 60% or more of his or her Indexed Earnings."

24. If Defendant had found Plaintiff disabled under the Any Occupation definition, the Plan would have entitled Plaintiff to 60% of his covered earnings less other income: $641.00 per month. Under the Plan and given the age at which his disability began, Plaintiff would have been eligible for a maximum of 24 months of benefit payments.

25. Defendant denied Plaintiff Any Occupation benefits in a letter dated July 28, 2014: two months before the start of the Any Occupation period. This preemptive and speculative Initial Denial ignored incontrovertible evidence of Plaintiff's permanent disability as defined by the Plan.

26. The July 28, 2014 Initial Denial ignored the overwhelming weight of evidence demonstrating Plaintiff's total disability. As early as November 7, 2012, Plaintiff's pain management specialist, John Pier, M.D., stated:

> "<u>I do not see Perry having a work capacity within the competitive labor market. He simply is too functionally limited and is now status post 5 lumbar surgeries, including now a 3-level fusion. Patients with 3-level fusions unfortunately, do not do well in a competitive labor market</u>, especially when they have done manual labor in the past. Mr. Nye is encouraged to remain as active as possible and as flexible as possible with utilization of the elliptical. I will see him on an as needed basis. I will defer medication management to primary care. <u>I will defer disability paperwork to primary care but I do support it as discussed above</u> [emphasis added]."

27. Plaintiff's primary care provider (PCP), Robert Cianfarano, PA, offered this assessment on April 8, 2014:

> "The severity of the problem is incapacitating. The problem has worsened. The frequency of the pain is persistent. Location of pain is in the bilateral neck, bilateral lumbar area, bilateral leg and right worse than left pain to ankles. Location of weakness/numbness is in the bilateral lumbar area and bilateral leg. The pain is radiating to the bilateral ankle, bilateral back and bilateral thigh. The

patient describes the pain as stabbing. Symptoms are associated with bending over, lifting, pulling, pushing, sitting, walking and walking up stairs. Risk factors include age. Aggravating factors include bending, changing positions, climbing stairs, lifting, pushing, sitting, standing and walking short distances. Relieving factors tried include pain medications/drugs. Not relieved by bending forward, exercise, heat, lying down, OTC medication, physical therapy, rest, sitting and stretching. The etiology is acquired stenosis and degenerative. Associated symptoms include bladder incontinence, bowel incontinence, decreased mobility, gait disturbance, numbness, spasms, tingling in legs, tingling in thighs and weakness in legs."

28. Defendant's Initial Denial of July 28, 2014 failed to mention, much less contradict, these unequivocal statements of his treating providers.

### Plaintiff's Appeal of Initial Denial

29. Plaintiff appealed the Initial Denial in letters dated April 23, 2015, June 11, 2015, August 15, 2015, and September 14, 2015. The appeal letters and materials comprised a refutation of the flawed denial, a request for all relevant Plan documentation, and additional evidence demonstrating Plaintiff's continued disability.

30. Evidence submitted as part of this appeal included records of regular epidural injections in late 2014 and throughout 2015. The appeal submission also included primary care records for the period from July 2014 through August 2015. These records detail the significant analgesic regimen that nonetheless failed to fully treat Plaintiff's pain: meloxicam 15mg, gabapentin 1200mg, hydrocodone acetaminophen 10-325 every

7

four hours, daily use of transcutaneous electrical nerve stimulator (TENS) device, and medical marijuana.

31. The appeal evidence also contained a letter from Plaintiff's PCP that restated his April 8, 2014 assessment quoted above at paragraph 26. This letter also added: "<u>Over the past year his symptoms and condition has deteriorate [sic]. He does see a neuro spine specialist who performed spinal injections and blocks without relief of his pain</u> [emphasis added]."

## Defendant's Denial of Plaintiff's Appeal

32. In spite of additional evidence demonstrating Plaintiff's continued disability and deteriorated condition, Defendant denied the appeal in a letter dated October 15, 2015.

33. Defendant's in-house medical reviewers justified the Appeal Denial by trivializing Plaintiff's "subjective symptoms of pain" while claiming there was "no documentation noting any decrease in range of motion, inflammatory changes of the joints, or any physical examination findings that would require any functional impairment."

34. The Plan contains no exclusion for subjective symptoms like pain and Defendant's in-house medical team failed to provide any rationale for rejecting Plaintiff's longstanding and credible reports of debilitating pain.

35. Defendant also disregarded Dr. Pier's examination findings from as early as November 12, 2012 that revealed decrease in range of motion: "He has very poor lumbosacral flexion, very poor lumbosacral extension, which provokes more pain than does flexion…I believe he is doing everything he can to at least remain modestly

functional." The progressive deterioration of Plaintiff's condition since that time could only diminish his functionality.

36. Defendant's in-house reviewers also ignored the obvious "physical examination finding" that, in the words of Dr. Pier, Plaintiff is "status post 5 lumbar surgeries, including now a 3-level fusion."

37. The denial also exhibited other significant failures and errors as elaborated in undersigned counsel's letter of May 13, 2016: failure to properly consider the Social Security Administration's award of disability benefits; failure to discuss more than a single surgical note from April 2012; failure to cite any medical authorities or standards; and misrepresentation of Plaintiff's willingness to pursue available treatment.

## Plaintiff's Second Appeal

38. Plaintiff began the appeal of the Appeal Denial with a letter dated May 13, 2016 that included extensive new evidence of his ongoing disability and a repeated request for all relevant Plan documentation.

39. The Second Appeal included this March 25, 2016 statement by Dr. Pier explaining limitations he identified in a functional capacity evaluation:

> "patient s/p multiple spinal surgeries since 2005. Recently, s/p spinal decompression, L1/L2 laminectomy 11/24/2015. 11/24/15 procedure provided some relief (25-30% ?) of radicular foot/ankle pain that had become extremely severe. Despite this partial improvement, <u>pt continues since 5/14/14 with constant, debilitating daily pain from worn out L5- S1 disk (see Dr. Wilson notes 5/14/14)</u> [emphasis added]. Pt uses TENS unit daily, bio-freeze 6-7 X day, and Rx narcotics / medical marijuana. Pt receives epidural injections as often as

9

medically permissible with only temporary pain relief: epidural effectiveness subsides +/- 6-8 wks. <u>Patient IS NOT a malingerer--ongoing reports of pain since mid-2014 are credible and consistent with severity of spinal condition</u> [emphasis added]. Re: 1. Pt limited by pain to occasional lifting of less than 10lbs. Re: 2. Pt cannot stand for more than 5-10mins due to pain. Re: 3. Pt must change position (stand/walk +/-5-10mins) every 30-45 minutes. Must recline approx. every 2hrs for 15-20mins to relieve pain. Re: 4. Pt limited by pain to UE push/pull 10lbs or less. Pt drives but suffers radicular pain/ weakness in LE. AS EARLY AS 11/7/12, I STATED THAT I DID NOT SEE MR. NYE HAVING A WORK CAPACITY WITHIN THE COMPETITIVE LABOR MARKET [emphasis in original]."

A March 18, 2016 Physical Ability Assessment completed by Plaintiff's PCP, PA Cianfarano, noted similarly severe restrictions.

40. Also submitted with the appeal were records of physical therapy, physiatry, neurology, and primary care office visits that corroborated the assessments of Dr. Pier and PA Cianfarano.

## Defendant's Denial of Plaintiff's Second Appeal

41. Plaintiff's condition continued to deteriorate in 2016 until he finally underwent lumbar spine surgery—his seventh—on November 29, 2016.

42. Undersigned counsel had difficulty obtaining records of this surgery but ultimately received them in late January 2017. On February 2, 2017 undersigned counsel notified Defendant of this but requested more time to obtain an additional clarifying statement from Plaintiff's surgeon.

43.     On February 3, 2017, a Friday, Defendant sent a letter via postal mail that announced for the first time that no further extension of time would be granted to submit evidence.  Although Defendant was aware that the surgery records had been received and contained new and material evidence concerning the entire policy period in question, Defendant did not request these records from undersigned counsel.  Instead, on Monday, February 6, 2017—just one business day after posting a letter unexpectedly denying Plaintiff the opportunity to submit available material evidence—Defendant issued its Second Appeal Denial.

44.     Although the Second Appeal Denial actually discusses more recent medical evidence, it fails to do so impartially.  Defendant's in-house medical reviewers write: "There is no documentation of aggressive medication management or increased frequency of follow up to support that your client has a severe pain condition that is uncontrolled with medication."  This is an absurd assertion in light of the November 24, 2015 procedure—his sixth lumbar surgery—that even Defendant's staff characterize as "bilateral laminectomies at L1 and L2 to decompress severe spinal stenosis."  It is likewise contradicted by Dr. Pier's March 25, 2016 statement that "Pt receives epidural injections as often as medically permissible with only temporary pain relief."

45.     Defendant's medical staff also misrepresent the recent evidence when they write: "The December 23, 2015 office note with Dr. Wilson noted that your client was found to have 'markedly improved' pain and increased activity."  In fact, Dr. Wilson actually stated: "<u>He continues to have pain in an L5 distribution from his prior surgeries with Dr. Thibodeau</u>, but he has had relief of his neurogenic claudicatory symptoms.  His incision is well healed.  At this point, I am getting Mr. Nye involved in physical therapy. He has

had a good outcome so far. <u>I did caution him that his preexisting L5 root injury would not be completely addressed with the surgeon</u> [sic] [emphasis added]." This biased approach to the evidence infects every denial in the administrative record.

46. Defendant's in-house medical staff again attempted to discredit Plaintiff's reports of pain even though the Plan contains no exclusion for subjective symptoms like pain.

### Addendum Review & Final Denial

47. In a letter dated March 7, 2017, undersigned counsel demanded that Defendant reopen Plaintiff's claim or, in the alternative, grant a voluntary appeal. By letter dated March 14, 2017, Defendant agreed to conduct an "addendum to the full file reviews."

48. Submitted with the March 7, 2017 letter were records of Plaintiff's November 29, 2016 surgery as well as a statement by his surgeon, James Wilson, M.D.. Dr. Wilson writes:

> "I performed surgery on Perry Nye on November 29, 2016. As the operative report details, I discovered significant pathology at the site of his 2012 L2-L3 fusion that was not visible on prior imaging: an almost Charcot type joint at L1-L2; loose screws and hardware pulled away from the vertebral body at L2; obvious movement between L2 and L3. <u>In my opinion, the significant extent of this pathology and instability provides firm clinical evidence to substantiate Mr. Nye's longstanding reports of debilitating pain. Please grant this unfortunate gentleman the disability benefits he deserves</u> [emphasis added]."

49. In spite of this conclusive objective evidence, Defendant denied Plaintiff a final time in a letter dated April 6, 2017.

12

50.     This final denial exhibits the same obstinate partiality as previous denials. Defendant's in-house medical team acknowledged that during 2016, "Dr. Wilson saw your client routinely during this time period and reported consistently that your client presented with low back pain from previous surgery."  In spite of this, they inexplicably ignore Dr. Wilson's surgical findings and claim "there are no clinically correlating objective findings to support that the intraoperative findings resulted in a functional impairment."

51.     In fact, the extreme pathologies discovered in the November 2016 surgery are the "clinically correlating objective findings" that obviously substantiate Plaintiff's consistent reports of debilitating pain in 2016 and previously.  The resulting unrelenting, extreme pain Plaintiff suffered unquestionably caused the disabling functional impairments his providers repeatedly observed and cited between 2012 and 2016.  The stubborn refusal of Defendant's medical staff to acknowledge and properly consider Plaintiff's objectively substantiated pain goes beyond partiality: after more than 4 years, it is an outrage.

52.     The Initial Denial, Appeal Denial, Second Appeal Denial, and Final Denial failed to follow Department of Labor Regulations requiring that Cigna indicate what "internal rules, guidelines, protocols or similar criterion are relied upon" in reaching an adverse decision.  29 C.F.R. §2560.503-1(g)(v)(A).

53.     Only in the Second Appeal Denial of February 6, 2017 did Defendant begin to suggest what sort of documentation Plaintiff should submit to perfect his claim: measures "such as inclinometer, goniometer or muscle group testing."  Of course, Defendant's

failure to disclose this information until after the conclusion of the policy period necessarily precluded Plaintiff from presenting the required evidence during that time.

## V.
## Statement of Claims

54. The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 53 above as if fully set forth herein.

55. Plaintiff's employer, Verso, had incorporated into its employee benefit package a long-term disability benefit plan within the meaning of ERISA, 29 U.S.C. §1002(1)(A). The Plan was insured by Defendant, a for-profit private insurer, which upon information and belief pays long-term disability benefits from its own reserve funds.

56. The Plan promised benefits if the Plaintiff met the definition of "disabled" under the Plan. For the Any Occupation period in question, the Plan states that "the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is: 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and 2. unable to earn 60% or more of his or her Indexed Earnings."

57. If he remained disabled, the Plan entitled Plaintiff to receive from Defendant 60 percent of his basic monthly earnings for the 24 months from September 25, 2014 through September 24, 2016.

58. Under any reasonable analysis, the extensive medical evidence of Plaintiff's restriction, pain, and resulting limitations compel the conclusion that he has been continuously disabled in accordance with the Any Occupation definition of "disability" under the Plan since at least September 25, 2014.

59.    The Plaintiff requested review of his denial of benefits in accordance with the Plan's appeal procedures.  Defendant denied his appeal in multiple letters: the last on April 6, 2017.  In that letter, Defendant stated that Plaintiff has exhausted all internal appeals.

60.    Defendant's denial of the Plaintiff's contracted-for long-term disability benefits was unreasonable, arbitrary and capricious rather than "full and fair" as required by 29 CFR § 2560.503-1(h)(2).  Defendant persistently disregarded or misrepresented available objective evidence substantiating Plaintiff's limitations and constant, extreme pain.

61.    In the alternative, the Defendant's denial was erroneous as will be demonstrated by a *de novo* review by the Court.

62.    By concluding the Second Appeal period without notice to Plaintiff and without receiving available material evidence, Defendant failed to conduct its review "solely in the interest" of the Plaintiff as required by 29 U.S.C. §1104(a)(1)(A)(i).

63.    The Plaintiff is entitled to immediate payment of long-term disability benefits with interest at the highest permissible rate from September 25, 2014 until September 24, 2016, his date of termination under the Plan.

64.    The Plaintiff is entitled to costs and attorney fees pursuant to 29 U.S.C. § 1132(a)(1)(B) & (g)(1).

65.    The Plaintiff is also entitled to penalties pursuant to 29 U.S.C. § 1132(c) for Defendant's failure to comply with Plaintiff's repeated requests for relevant Plan materials.

WHEREFORE, Plaintiff Perry Nye requests judgment against the Plan and its underwriting insurer Defendant LINA for damages in an amount determined to be due,

plus equitable relief in the form of this Court's order requiring the Plaintiff's entitlement to disability benefits, interest, costs, attorney fees, penalties and such further relief as the Court deems just and proper.

                Respectfully submitted,

Dated: July 28, 2017        /s/J. Jason Heinze, Esq.
                J. Jason Heinze
                Attorney for the Plaintiff
                Holder Disability Lawyers, LLC
                P.O. Box 4038
                Portland, ME 04101
                Ph: (207)774-2899
                jheinze@holderdisabilitylawyers.com

                /s/Mariah C. Holder, Esq.
                Mariah C. Holder
                Local Counsel for the Plaintiff
                mholder@holderdisabilitylawyers.com